## Fannie Moore and Roe Jane Moore v. Commonwealth.

(Decided October 5, 1926.)

### Appeal from Pike Circuit Court.

1   Homicide.—Evidence held to sustain conviction for manslaughter.

2.   Homicide.—Error in form of instruction on law of self-defense, held not prejudicial, where there was no evidence requiring any such instruction.

3.   Criminal Law.—Permitting Commonwealth's witness to testify in rebuttal, in contradiction of evidence for defendant, that but one shot was fired, held not error.

PICKLESIMER & STEELE for appellants.

FRANK E. DAUGHERTY, Attorney General, and G. D. LITSEY, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY JUDGE McCANDLESS—
Affirming.

Appellants were jointly indicted and tried for the murder of Mollie Adams, each being convicted of manslaughter and sentenced to the penitentiary for fifteen years, Fannie being prosecuted as principal and Roe Jane as aider and abettor. On this appeal it is urged that the verdict is not sustained by the evidence and that the court erroneously instructed the jury as to the law of self-defense.

The homicide occurred in the small mining village of McVeigh, all of the parties and witnesses being colored. There is a row of double tenement houses situated near each other on both sides of the street. Mollie Adams, Jessie Fields and the latter's husband lived in one of these. Fannie Moore lived in another on the same side of the street and two doors distant, there being but one tenement between them.

On the afternoon of the homicide Jessie Fields had an altercation with Fannie Moore in front of these buildings in which she shot and wounded Fannie Moore four times. None of the Commonwealth witnesses claim to have seen this, but they testify that after it occurred Mollie Adams went out on the street and brought Jessie Fields into her house; that Jessie went upstairs and Mollie shut the front door; that Fannie Moore started up the street and met Roe Jane Moore, who gave her a pistol; that Fannie followed the Fields woman to the Adams residence and tried to open the door; finding it locked she tried to kick it open, and failing in this she procured a two by four scantling and rammed it against the door, splintering it, and drew her pistol and fired once through the door, and, according to one witness, Fannie entered the house and returned, saying, "I got one." Mollie Adams was alone in the room at the time, but two witnesses who were in the house entered the room and found Mollie sinking to the floor, shot through the body, and from this wound she died shortly thereafter. A number of Commonwealth witnesses who were outside the house testify as to the conduct of the two appellants. Several of these saw Roe Jane Moore hand something to Fanny; three of them identified this as a pistol. One or two said it was wrapped in paper which Fannie tore off; that Roe Jane followed Fannie to the Adams home and said, "Shoot the G— d— door down."

Fannie Moore testifies that at the beginning of the difficulty she was standing on her porch and Jessie Fields was at the end of the Adams porch; that Lula Brown, who was present, said, "'What is the matter with Jessie?' and I said, 'Nothing, only John is down there,' and she (Jessie) said, 'You are a damn liar,' and she pulled a gun and shot at me, and Henry Jones taken her pistol and I turned back and got my husband's pistol in the room and I went on, and as she went in the door I shot, and after that Roe Jane and Will Bradley taken me up to her house." She further testified that she received four serious pistol wounds; that after Jessie ceased firing she went to her house and got her husband's pistol from the gramophone case and followed Jessie to the Adams house; when Henry Jones took the pistol from Jessie she (Jessie) said she was going to get another and kill her and she thought she was going to do it; that she fired to scare Jessie and was just trying to stop Jessie from getting another pistol and killing her; that she was only a short distance behind when Jessie went into the house; that she shot once and heard another shot from in the house.

Roe Jane Moore claims to have had nothing to do with the difficulty; that she wanted Fannie Moore to do some sewing for her and handed her a package of goods for that purpose, but no pistol and had none; that Fannie had a pistol when she met her. She did not see the difficulty; did see Fannie at the time she shot, but did not say "Shoot the G— d— door down;" there were two shots; Fannie fired but one.

Several witnesses for appellants corroborate their statements, while all of the witnesses for the Commonwealth deny that there was a shot fired from the house. After the shooting Jessie Fields was seen sitting astride her mother's prostrate body, waving the pistol and crying. Since then she has left the state and has never been tried for shooting Fannie Moore or appeared as a witness in this case.

From these facts it is argued that it is as probable that Jessie shot her mother as it is that Fannie Moore shot her and the jury should not have been permitted to speculate as to who did it. There is but little room for this argument. The physical facts show that the door was splintered and a bullet hole shot through it from the outside, and Fannie admits firing it. All of the Commonwealth witnesses deny that any shot was fired from

within the house, and no motive whatever was shown for Jessie Fields shooting her mother, hence at most this was a question for the jury. The court gave a self-defense instruction which was not technically correct. If the evidence authorized this defense it would be pertinent to discuss the prejudicial effect of the instruction, but we are unable to see any self-defense in this case. Fannie Moore admits that Jessie Fields was disarmed and that she was taken home by her mother and never returned to the scene of the combat, and that she, Fannie, procured a pistol and followed Jessie and her mother to their home and fired through the open door. She does claim that Jessie was threatening violence and declaring that she would get another pistol and finish Fannie up, and that she shot to frighten Jessie and prevent her from doing this; but she does not claim that she was in danger of great bodily harm, either real or apparent, at this time, and this is not shown by any other witness, hence there was no evidence upon which to base a self-defense instruction, and appellants cannot be prejudiced by the form of the one given. Complaint is also made of the introduction of evidence. It appears that the Commonwealth proved by several witnesses on rebuttal that but one shot was fired. This was competent in contradiction of appellants' claim that there were two shots, one from within the house. The court in its discretion permitted some evidence in rebuttal that should have been introduced in chief, but not of a character to constitute an abuse of discretion. Also, the Commonwealth's attorney asked some leading questions on direct examination, but, taken together with other evidence on the same point, we do not think they constituted prejudicial error. On the whole case it appears that appellants have had a fair nd impartial trial.

Wherefore, perceiving no error, the judgment is affirmed.